IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 16, 2003 Session

## MARCIE A. MURRAY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 94-C-1532     Seth Norman, Judge**

---

**No. M2002-03098-CCA-R3-PC - Filed February 18, 2004**

---

The petitioner contends that the post-conviction court erred in denying relief from her convictions for first degree murder and conspiracy to commit first degree murder. The petitioner has failed to show prejudice from any alleged ineffective assistance, and the issue concerning Leonard Rowe's testimony has been previously determined and is not cognizable for relief on post-conviction. The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Kathleen G. Morris, Nashville, Tennessee, for the appellant, Marcie A. Murray.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Tom Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner, Marcie A. Murray, was convicted of first degree murder and conspiracy to commit first degree murder. She received consecutive sentences of life imprisonment and twenty years. Her convictions and sentences were affirmed on direct appeal by this Court. State v. James Murray, Marcie Murray and Sharon R. Hurt, No. 01C01-9702-CR-00066, 1998 Tenn. Crim. App. LEXIS 1323 (Tenn. Crim. App., at Nashville, Dec. 30, 1998). The petitioner filed a petition for post-conviction relief that was denied. The petitioner contends in this appeal that the post-conviction court erred in denying relief for ineffective assistance of counsel because 1) the decision to testify was made by counsel and not petitioner, 2) counsel had a conflict of interest, 3) counsel failed to subpoena an alibi witness, and 4) counsel failed to obtain certain "easily available" evidence. The petitioner also claims the post-conviction court erred by precluding certain testimony of Leonard Rowe at the post-conviction relief hearing. The judgment of the post-conviction court is affirmed.

## Facts

The following factual background is taken from this Court's opinion in the petitioner's initial appeal. Murray, 1998 Tenn. Crim. App. LEXIS 1323, at *3-17. The petitioner and her husband, James Murray, initially shot the victim during a "drive-by" shooting. However, the victim survived the shotgun wound. Several months later, the petitioner, her husband, and the victim's wife, drugged the victim by putting Elavil and diphenhydramine (commonly known as Benadryl) into mixed drinks consumed by the victim. The concoction caused the victim to become unconscious. While the victim was unconscious, the petitioner and her husband each shot the victim in the head. Both of the shots were fatal. The petitioner was convicted of first degree murder and conspiracy to commit first degree murder

Counsel for the co-defendant, James Murray, testified at the hearing on the petition for post-conviction relief. The co-defendant's trial counsel stated that he did not think that his client or the petitioner would have been found guilty without the testimony by the petitioner at trial. Although he had originally planned for his client to testify, he felt that the State's case was marginal and decided that it would be best if his client did not testify. He also tried to convince the petitioner's trial counsel that the petitioner should not testify.

The co-defendant's trial counsel talked with Pam Woolums, the petitioner's sister, regarding calling her as an alibi witness. She told him that James Murray and the petitioner were out of town when the murder occurred. Woolums indicated that she was willing to testify, but she needed to be subpoenaed in order for her to get off of work. The co-defendant's counsel testified that he subpoenaed her, but she did not show up for trial. He later found out that she had outstanding warrants.

James Murray testified that the petitioner had medical problems while incarcerated at Corrections Corporation of America (CCA) pending trial. He said that she had trouble remembering things. She was also having numerous seizures. He believed that her trial counsel was "coaching her" on what to say.

Dr. Charles Harlan was the medical examiner who performed the autopsy on the victim in this case. Prior to being murdered, the victim in this case had ingested a large quantity of Benadryl. Dr. Harlan testified that he did not know if Benadryl was available in a clear tasteless form when this murder was committed, in opposition to his trial testimony. The cause of death in this case was two gunshot wounds to the head. He stated that Benadryl was available in several forms including liquid, capsules, and tablets.

The petitioner's trial counsel testified that he was the appointed counsel for the petitioner at trial. He stated that the petitioner made the decision to testify at trial. She felt that her story needed to be told. She was aware that James Murray would not be testifying. Trial counsel felt that they were losing the case anyway, and the petitioner's testimony did not matter at that point. Additionally, the petitioner was well educated (the petitioner was a registered nurse), and he felt that

she could present her side as well as possible. He said that if the petitioner had not wanted to testify "then that would have been that." He agreed that he should have subpoenaed Woolums himself and not relied on a co-defendant's counsel. The petitioner indicated to trial counsel that she was being abused and not being given proper medical treatment while at CCA. Trial counsel stated that he represented CCA several years ago in cases involving alleged civil rights violations similar to those alleged by the petitioner.

**Analysis**

The petitioner contends on appeal that she received ineffective assistance of counsel. This Court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive her of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. Goad, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Honeycutt, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002) (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner bears the burden of proving by clear and convincing evidence the factual allegations that would entitle the petitioner to relief. Tenn. Code Ann. § 40-30-110(f). This Court

is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The court's application of the law to the facts is reviewed *de novo* without any presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The petitioner first argues that the decision to testify at trial was made by counsel and not by her. She points out that trial counsel was unable to locate any signed acknowledgment form regarding her right not to testify. The petitioner contends that she was prejudiced, as indicated by co-defendant's trial counsel's testimony that he felt that she would have been found not guilty until she testified. The only evidence in the record concerning the decision to testify is the testimony of her trial counsel. He testified that the petitioner made the decision to testify. He indicated that she wanted to tell her side of the story. Despite not being able to locate any acknowledgment form, he specifically remembered advising her about the right not to testify. The petitioner did not testify at the post-conviction relief hearing and has produced no evidence to the contrary that the decision to testify at trial was hers alone. This argument is without merit.

The petitioner next argues that she received ineffective assistance of counsel because trial counsel had an actual conflict of interest due to his representation of CCA in civil rights cases. She argues that his loyalty to CCA colored his judgment, causing him to minimize the severity of her complaints about her treatment at CCA. He indicated to the petitioner that if she intended to pursue any claims against CCA, he would not be able to represent her. The mere fact that counsel might have a potential conflict of interest in representing clients does not authorize a presumption of ineffective assistance of counsel. Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708 (1980); State v. Parrott, 919 S.W.2d 60 (Tenn. Crim. App. 1995). In order for prejudice to result, an attorney must actively represent conflicting interests. Cuyler, 446 U.S. at 349-50, 100 S. Ct. at 1718-19. "The proper focus is solely upon whether counsel's conflict affected counsel's actions . . . ." Netters v. State, 957 S.W.2d 844, 848 (Tenn. Crim. App. 1997). We conclude that there was no "actual conflict of interest." This argument is without merit.

The petitioner contends ineffective assistance because of trial counsel's failure to subpoena Pam Woolums, an alibi witness. Counsel acknowledged that he should not have relied on a co-defendant's trial counsel to subpoena the witness. However, the petitioner has failed to demonstrate prejudice on this issue. The co-defendant's trial counsel subpoenaed Woolums, and she did not show up at trial. Additionally, Woolums did not testify at the post-conviction hearing, so it is impossible to know what her testimony would have been. The only way to establish the prejudicial value of a witness's testimony is to present that witness at the post-conviction hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of . . . what a witness's testimony might have been if introduced by defense counsel." Id. This argument is without merit.

The petitioner lastly contends ineffective assistance because of trial counsel's failure to obtain evidence of the forms of Benadryl available at the time of the murder. The autopsy of the victim in this case revealed large amounts of Benadryl. Apparently, the defendants in this case gave

-4-

the victim Benadryl before shooting him in the head. The petitioner argues that Dr. Harlan testified at trial that colorless, tasteless Benadryl was available at the time of the murders. However, evidence subsequently discovered revealed that this statement was incorrect. As the post-conviction court noted, this was irrelevant. The State never presented proof of the form of Benadryl used. The doctor testified that he could not determine from the autopsy the form of Benadryl ingested by the victim. The evidence showed that it could have been liquid, capsules, or even tablets. At most, the evidence could have been used to impeach the statements of Dr. Harlan. It is undisputed that the victim in this case died from two gunshot wounds to the head. The petitioner has failed to demonstrate sufficient prejudice on this issue. This argument is without merit.

The petitioner also contends that the post-conviction court erred in refusing to allow testimony by Leonard Rowe concerning statements he made after the trial. Leonard Rowe was a co-defendant who pled guilty in exchange for testifying against the petitioner and the other co-defendants. Specifically, the petitioner sought his testimony that he had given sworn statements post-trial that he had lied during his testimony at trial and had been pressured by the State to give certain testimony through a "secret agreement." The petitioner initially sought to present this evidence to the trial court at the hearing on the motion for a new trial. The post-conviction court ruled that the issue had already been litigated and decided and should be dismissed. See Tenn. Code Ann. § 40-30-106(f). In regard to this issue on direct appeal, this Court stated in pertinent part:

> [Petitioner bases her claim] on two sworn statements given by Leonard Rowe on August 1 and August 27, 1996, over one year after the trial. The statement of August 1st was given to counsel for Ms. Hurt and the statement of August 27th was given to counsel for Ms. Hurt and counsel for [petitioner]. These statements were given in the presence of a court reporter, but no representative of the State was present to cross-examine Rowe during either statement. In the first statement, Rowe claimed that during the trial, he "was under a lot of pressure on the witness stand, threats, if [he] didn't convince the jury that [Appellants] were guilty, the D.A. was going to burn [his] ass." In addition, he said that the prosecutor promised him a letter of recommendation so that he would make parole at the earliest possible date. Rowe stated that he believed that this meant that he would only "do a little bit more jail time," although he admitted that there was never any discussion of how much time he would actually serve. Rowe also claimed that he was "tutored" by the prosecutor as to what to say at trial and the prosecutor "put words in [his] mouth." Rowe claimed that he did not tell the truth at trial, but he refused to specify what he had been untruthful about. Rowe also stated that he felt that the State had not lived up to its promises, but he refused to say why that was the case. In the second statement, Rowe reiterated these claims and stated that the prosecutor specifically told him not to reveal the fact that he had made a deal with the State. Despite making these allegations, Rowe invoked his Fifth Amendment privilege against self-incrimination and refused to testify during the hearing on the Motion for a New Trial.

Murray, 1998 Tenn. Crim. App. LEXIS at *63-66.

A post-conviction court shall dismiss any petition for post-conviction relief that claims relief for issues that have been waived or previously determined. Tenn. Code Ann. § 40-30-106(f). Section 40-30-106(h) defines "previously determined" as follows:

> A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, *regardless of whether the petitioner actually introduced any evidence*.

Tenn. Code Ann. § 40-30-106(h) (emphasis added). As we determined in the direct appeal, the trial court was correct in refusing to grant the motion for a new trial based on the affidavits alone. See Hicks v. State, 571 S.W.2d 849, 852 (Tenn. Crim. App. 1978). The trial court granted the petitioner an evidentiary hearing, but Rowe refused to testify. This issue has been previously determined and is not cognizable for relief on post-conviction.

## Conclusion

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE